IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BNSF Railway Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-cv-3072 |
| | ) | |
| Town of Cicero, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

BNSF brought suit against Cicero and subsequently filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") in response to the Town of Cicero's threat to shut off sewer service to BNSF's railroad hub on July 19, 2021, thereby requiring it "to be vacated" as "a hazard to health" because BNSF objected to Cicero's adoption and enforcement of a discriminatory ordinance requiring *only* railroads to pay an exorbitant $350 per acre per month for sewer use.

On June 23, 2021, the Court entered an Order, in part, requiring that "[a]ny discovery requests for the purpose of the pending motion must be proportionate to the needs of the case at this early stage." Dkt. 21. Cicero has ignored the Court's Order and propounded discovery that is neither relevant to, nor proportionate to the needs of, this case, much less the pending Motion. Specifically, Cicero has served BNSF with interrogatories and requests for production that demand information about, and "[a]ny and all documents relating to" all construction, maintenance, repairs, or restorations, any related government permits, and any environmental studies with respect to the Cicero railyard, *within the past ten years*. Cicero also demands information about any incidences of flooding at the railyard (with no time limit whatsoever), and any documents relating to incidences of flooding or any other inadequate functioning of the railyard's water systems (within

the past ten years). Finally, Cicero demands to know BNSF's sewer and water rates for all facilities in the Chicago metropolitan area. *See* Exhibit A (The Town of Cicero's First Set of Interrogatories to BNSF); Exhibit B (The Town of Cicero's First Set of Requests for Production to BNSF).

These requests are not relevant to BNSF's Motion, which will require an assessment of whether BNSF is likely to succeed on the merits, whether BNSF is likely to suffer irreparable harm in the absence of preliminary relief, whether the balance of equities tips in BNSF's favor, and whether an injunction is in the public interest (the "*Winter* factors"). *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). In support of its Motion, BNSF argues that it is overwhelmingly likely to succeed on the merits because the Ordinance is preempted by the ICC Termination Act of 1995 ("ICCTA"), or alternatively the Railroad Revitalization and Regulatory Reform Act of 1976 ("4-R Act"), because it implements a "fee" or "tax" that discriminates against rail. *See* Memorandum or Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction. Dkt. 13 at 8-12. BNSF's Motion explains that the Town of Cicero's Sewer Rate Ordinance discriminates against BNSF in violation of federal law because the Ordinance plainly requires BNSF to pay an exorbitant $350 per acre per month for sewer use, while calculating sewer bills for other local commercial and industrial users within Cicero based on actual water usage.

The Town of Cicero's discovery requests are entirely irrelevant because, at most, they seek information that hypothetically could justify an alternative ordinance that charges railroads more based on an increased burden on the Town's sewer system (i.e., due to the maintenance of property or frequency of flooding). But the text of the Ordinance at issue here does not impose an increased charge on users who overburden the sewer system on that basis; it imposes a heightened, burdensome, and discriminatory rate on *railroads*, and railroads alone. It is not relevant to this Court's evaluation of BNSF's Motion whether Cicero could have imagined or enacted a different ordinance based on the factors it seeks to explore in its discovery requests.

BNSF further addresses the remaining *Winter* factors by arguing that it faces irreparable injuries in the form of business disruption, loss of goodwill, continued violations of its Constitutional rights, and impairment of its property rights. *Id.* at 12-14. BNSF also argues that the equities and public interest weigh in its favor where the supremacy of federal law is vindicated. *Id.* at 14-15. Cicero's discovery requests do not address ***any*** of the arguments asserted by BNSF in support of the Motion and are thus wholly irrelevant to the issues present at this early stage of the case.

In addition to the fact that the requests are irrelevant, they are disproportionate to the needs of this case and overly burdensome. Cicero seeks information related to actions that BNSF has taken with respect to the Railyard over the last 10 years, much of which is unrelated to BNSF's sewer use. For example, Request for Production No. 1 seeks "[a]ny and all documents relating to any construction, maintenance, repairs, or restorations performed" within the last decade. *See* Ex. B (RFP No. 1). That request, and others like it, are neither relevant nor proportional to the needs of the case.

I. **BACKGROUND**

The Town of Cicero served the attached Interrogatories and Requests for Production on Wednesday, June 23, 2021, at approximately 8:55 p.m. After reviewing Cicero's discovery, counsel for BNSF responded on Friday, June 24, explaining BNSF's position that the requests are irrelevant to the claims in this case and are not proportional to the needs of the case and requesting to meet and confer if Cicero would not withdraw the requests. The parties met and conferred on Monday, June 28. Despite conferring in good faith, the parties were unable to resolve the dispute over Cicero's discovery requests. Cicero's counsel maintained that the discovery is relevant to the Town's position because it could show that the ordinance does not have a discriminatory effect and therefore BNSF has no damages. While Cicero's counsel was willing to consider narrowing

their requests, because the requests were wholly irrelevant to the Motion, BNSF did not see a way to the limit the requests. BNSF filed the instant motion for protective order the following day, on Tuesday, June 29.

## II. ARGUMENT

Good cause exists to issue a protective order against Cicero's discovery requests because Cicero seeks information is that is neither relevant to, nor proportional to the needs of, this case—especially not at this early stage of the litigation. *See* Fed. R. Civ. P. 26(b)(1). A court may issue a protective order, "for good cause," to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense[.]" *See* Fed. R. Civ. P. 26(c)(1). The movant bears the burden of showing good cause why discovery should be limited "by a particular and specific demonstration of fact." *Cabrini-Green Local Advisory Council v. Chicago Hous. Auth.*, 13 CV 3642, 2014 WL 2867312, at *2 (N.D. Ill. June 24, 2014) (internal citations omitted) (finding that "allowing broader discovery at this point in the litigation would be an undue burden or expense").

### A. Cicero seeks information that is neither relevant to, nor proportional to the needs of, BNSF's Motion and the early stages of this case.

Through five requests for production and five interrogatories, Cicero seeks broad discovery regarding BNSF's railyard, primarily over the last 10 years—though some requests are entirely unbounded as to time. *See generally* Ex. B (RFP No. 2 (requesting various documents pertaining to a 10-year historical period, and requesting other categories of documents without indicating any time limitation)). The Court should issue a protective order because none of the requested information is relevant to, or proportionate to the needs of, the resolution of BNSF's Motion.

### 1. Cicero's discovery requests are not relevant to any of the *Winter* factors.

### *(a) Cicero's discovery requests are not relevant to the discriminatory nature of Cicero's Ordinance.*

Regarding BNSF's likelihood of success on the merits, BNSF argues that the Ordinance is preempted by federal law. If characterized as a "fee," the ordinance fails under the ICCTA because, rather than address state and local concerns generally, it singles out "Railroad yards and rights-of-way" for disfavored treatment. If characterized as a "tax," the ordinance violates the 4-R Act, which prohibits localities from imposing "another tax that discriminates against a rail carrier." 49 U.S.C. § 11501(b)(4); *see* Mem. in Supp. at 8-12. The gravamen of BNSF's claims is that Cicero has engaged in, and continues to engage in, discriminatory conduct by enacting and seeking to enforce the Ordinance.

The discovery Cicero seeks is not calculated to respond to these arguments. The discrimination that violates federal law is plain on the face of the Sewer Rate Ordinance, which targets railroads for a discriminatory sewer rate increase that is calculated based on acreage, while maintaining rates for other local commercial and industrial users that are based on monthly water use. The information sought by Cicero's discovery requests bears no relationship to the discriminatory Ordinance as written. Regardless of any response that might be provided by BNSF, the actual Ordinance enacted by Cicero would still be discriminatory because it imposes an exorbitant and differential burden on BNSF and not on other ratepayers.

In fact, Cicero seeks discovery of information that it did not possess previously. By definition, Cicero could not have relied on such information when it developed the rate increase; it is not possible that information that Cicero did not know or consider prior to developing the Ordinance could render the facially discriminatory Ordinance lawful. At best, the requests are a post hoc attempt to develop a pretextual justification for the rate increase and, thus, they are

irrelevant to the issue of whether the rate increase was discriminatory. Even if Cicero could establish that BNSF imposes an unusual burden on the sewer system, the Ordinance is not written to charge extra in proportion to BNSF's burden on the sewer system; it is written to charge extra to railyards, and railyards alone, based on acreage, while charging other users based on their actual water use. If anything, the fact that Cicero is asking for this information (and not, for example, propounding requests for admission on matters it already knows) underscores BNSF's allegation that little or no analysis supports this amendment to the Ordinance.

> (b) *Cicero's discovery requests are not relevant to the irreparable harm that BNSF identified in its Motion.*

Next, BNSF argues it will suffer irreparable harm in the form of business disruption, loss of goodwill, continued violations of its Constitutional rights, and impairment of its property rights. *See* Mem. in Supp. at 12-14. None of Cicero's discovery requests seeks information related to BNSF's future business disruption, future loss of goodwill, or future violations of BNSF's constitutional rights. Instead, Cicero's discovery requests seek historical information about BNSF's railyard, including over "the last 10 years." *See* Ex. B (RFP Nos. 1, 3-5); Ex. A (Interrog. Nos. 1-3). Information responsive to those requests regarding the last 10 years cannot be relevant to BNSF's argument that it will suffer ***future*** irreparable harm if it is not granted a restraining order.

> (c) *Cicero's discovery requests are not relevant to the equities or public interest.*

BNSF's brief and supporting declarations argue that the equities and public interest are served when the supremacy of federal law is vindicated, Mem. in Supp. at 14-15, and that BNSF's continued operations serve the public interest in myriad ways, including by connecting various origin and destination points in interstate commerce, employing hundreds of workers, benefitting public infrastructure by carrying freight cars by rail rather than on the public highways, and helping

the environment because trucks are significantly less fuel-efficient than railroads. *Id.* at 15. None of BNSF's arguments about equities or public interests is addressed by any of Cicero's discovery requests, and therefore the information cannot be relevant to the equities or public interest factors that BNSF has identified as relevant to the Motion.

Because Cicero's discovery requests do not seek any information that is relevant to the arguments presented in BNSF's Motion, this Court should enter a protective order against any requirement to respond to any Cicero's discovery requests.

**B.      Cicero's discovery requests are unduly burdensome and therefore not proportional to the needs of this case.**

Cicero's requests are overbroad in terms of the categories of information and documents addressed as well as the extensive time periods encompassed. For example, Cicero requests all information and any documents pertaining to *any* railyard "construction, maintenance, repairs, or restorations," and corresponding permits, "environmental studies, reports, assessments, audits, plans, diagrams, or other documents" *over the past 10 years* (Ex. A, Interrogatories Nos. 1-3; Ex. B, RFP No. 1), as well as all information pertaining to any type of flooding at the railyard *with no historical time limit* and any documents pertaining to flooding or drainage problems at the railyard *over the past 10 years* (Ex. A, Interrogatory No. 4; Ex. B, RFP Nos. 4, 5). Because none of the information sought is relevant to the issues presented by the Motion, the burden that would fall to BNSF in obtaining, reviewing, and producing *at least 10 years' worth* of historical information and records about its Cicero railyard within 7 days outweighs any benefit that would be provided to Cicero. *See* Fed. R. Civ. P. 26(b)(1) (measuring proportionality, in part, by "whether the burden or expense of the proposed discovery outweighs its likely benefit"). The information sought by Cicero's discovery requests is not proportional to the needs of the case because it does not address the issues at stake. The unconstrained nature of the requests as to the types of information and

documents sought as well as the time periods addressed underscores that the burden of the discovery is not justified given the irrelevance of the discovery to the resolution of the issues presently before the Court.

WHEREFORE, for all of the foregoing reasons, BNSF requests a Protective Order against any requirement that it respond to Cicero's discovery requests.

Dated: June 29, 2021

Respectfully submitted,

**BNSF RAILWAY COMPANY,**

By: /s/ *Renato Mariotti*

Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe, 37th Floor
Chicago, Illinois 60603
312.346.7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com

Sara L. Chamberlain
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
314.552.6000
schamberlain@thompsoncoburn.com

Benjamin J. Horwich (*pro hac vice*)
Teresa A. Reed Dippo (*pro hac vice*)
Rebecca L. Sciarrino (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
415.512.4000
ben.horwich@mto.com
teresa.reeddippo@mto.com
rebecca.sciarrino@mto.com

***Attorneys for Plaintiff***

- 9 -

## **CERTIFICATE OF SERVICE**

      I, Renato Mariotti, hereby certify that on June 29, 2021, I electronically filed the foregoing Plaintiff's Motion for Protective Order with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

                                                                                   */s/ Renato Mariotti*