```
 1                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
      BNSF RAILWAY COMPANY,          )    Docket No. 21 CV 3072
 4                                   )
                     Plaintiff,      )
 5                                   )
             -vs-                    )    Chicago, Illinois
 6                                   )    June 23, 2021
      TOWN OF CICERO, ILLINOIS,      )    9:00 o'clock a.m.
 7                                   )
                     Defendant.      )
 8

 9          TRANSCRIPT OF PROCEEDINGS - Telephonic Status
            BEFORE THE HONORABLE STEVEN C. SEEGER
10

11
      APPEARANCES:
12
      For the Plaintiff:       THOMPSON COBURN LLP
13                             BY:  MR. RENATO T. MARIOTTI
                               55 East Monroe Street
14                             37th Floor
                               Chicago, Illinois  60603
15
      For the Plaintiff:       MUNGER TOLLES & OLSON LLP
16                             BY:  MR. BENJAMIN J. HORWICH
                               560 Mission Street
17                             27th Floor
                               San Francisco, California  94105
18
      For the Defendant:       DEL GALDO LAW GROUP LLC
19                             BY:  MS. CYNTHIA S. GRANDFIELD
                                    MR. MICHAEL A. ALBERT
20                             1441 South Harlem Avenue
                               Berwyn, Illinois  60402
21

22
                   LAURA LACIEN, CSR, RMR, F/CRR
23                     OFFICIAL COURT REPORTER
                      219 South Dearborn Street
24                           Room 1212
                      Chicago, Illinois  60604
25                         (312) 408-5032
```

1       (The following telephonic proceedings were held

2    remotely:)

3              COURTROOM DEPUTY:  21 CV 3072, BNSF Railway Company

4    versus Town of Cicero.

5              THE COURT:  Good morning, everyone.  This is Judge

6    Seeger.  Let's get everyone's appearances on the record if

7    you would, please.  Let's start with counsel for the

8    plaintiff.

9              MR. MARIOTTI:  Good morning, your Honor.  Renato

10   Mariotti on behalf of the plaintiff BNSF Railway Company.  My

11   co-counsel are also now present on the call as well.

12             THE COURT:  All right.  Good morning, Mr. Mariotti.

13   Do you want to go ahead and -- co-counsel, do you want to go

14   ahead and introduce yourself?

15             MR. HORWICH:  Good morning, your Honor.  This is

16   Ben Horwich on behalf of BNSF Railway.

17             THE COURT:  Good morning.  Do we have anybody else

18   on the line for the plaintiff?  All right.  Hearing no one.

19             Defense counsel, go ahead please.

20             MS. GRANDFIELD:  Good morning, your Honor.  Cynthia

21   Grandfield on behalf of defendant Town of Cicero and I have

22   co-counsel with me on the call.

23             THE COURT:  Good morning, Ms. Grandfield.  Do you

24   want to go -- is it grand "feld" or "field"?

25             MS. GRANDFIELD:  Grandfield.

1    THE COURT:  Field, like a -- like a field of corn?

2    MS. GRANDFIELD:  You got it.

3    THE COURT:  Got it, okay.  Good morning, Ms.

4    Grandfield.  Do you want to -- co-counsel, please go ahead

09:09AM    5    and introduce yourself.

6    MR. ALBERT:  Good morning, your Honor.  Michael

7    Albert on behalf of the Town of Cicero.

8    THE COURT:  Good morning.  Do we have anybody else

9    on the line for any -- any of the parties?

09:09AM    10    All right.  Well, good morning everyone.  We are

11    here today for a hearing on the motion for a temporary

12    restraining order, preliminary injunction.  I will tell you

13    right off the bat I have read everything in detail.  I did

14    want to say thing about the schedule.  Up to this point, you

09:09AM    15    folks filed -- Burlington Northern filed a motion for a TRO

16    on June 14th.  I set that case -- I'm sorry.  I set it for a

17    hearing on June 17th.  The parties requested to move it from

18    June 17th to June 18th, which I accommodated.

19    We found out on the afternoon of June 17th that

09:09AM    20    June 18th was a brand new federal holiday, in celebration of

21    Juneteenth, so that needed to be rescheduled so we pushed it

22    to today so it's a little bit later than I typically go for a

23    TRO.  I like to see people promptly.  Because of the request

24    of the parties and because of the brand new federal holiday

09:10AM    25    that was not expected, we're doing it early this week.

1          Okay.  I first want to talk about where we are with
2    the lay of the land.  I'm wondering if anything has changed
3    since BNSF has filed a motion for a TRO.  I did read the
4    Taylor Declaration, Paragraph 7, Docket Number 13-1.  There
09:10AM  5    was a payment that was going to be due on June 21st.  I don't
6    know what happened there.  I don't know if it was paid or
7    wasn't paid or put in escrow or whatnot.  But just as a
8    general matter, I'm wondering if anything has changed since
9    the motion was filed, if the parties had any discussions, or
09:10AM  10   whatnot.
11         So, Mr. Mariotti, we'll start with you, or
12   Mr. Horwich, either one.  Counsel for the Railway.
13         MR. MARIOTTI:  All right.  Yes.  So, Judge, we have
14   been making --
09:11AM  15        THE COURT:  And I'm sorry to -- I'm sorry to
16   interject.  I have no idea who is talking so you got to
17   introduce yourself.
18         MR. MARIOTTI:  Oh, no problem.  This is Renato
19   Mariotti.  And BNSF has been making payments but at the level
09:11AM  20   it had been imposed in the past.  So, in other words, I think
21   more in line of the $6,600 as opposed to ninety-something
22   thousand dollars per month.
23         We have tried -- I mean, we've had numerous
24   attempts before we filed to have a resolution of this matter
09:11AM  25   and tried to, you know, find some way forward but we have

1    not.  Nothing has materially changed since that time.  And so

2    there is a -- the amount due, I think we already discussed

3    that in the briefing, is now, you know, over half a million

4    dollars because we haven't been able to reach a resolution.

09:11AM    5    THE COURT:  Got it.  All right.  So I want to make

6    sure I understand the time sensitivity of it.  The papers say

7    that the Town or Village issued a notice that they were going

8    to turn off water to the rail yard and that was going to be

9    effective July 19th, 2021, so about a month from now.  Is

09:12AM    10    that still correct, in other words, the -- the time

11    sensitivity here is that there's going to be a turn off of

12    water in a little less than -- a little less than a month?

13    MR. MARIOTTI:  That's -- that's my understanding.

14    Ben, I'm sorry.

09:12AM    15    MS. GRANDFIELD:  I'm sorry, your Honor.  I missed

16    that.

17    THE COURT:  Just -- we'll turn to defense counsel

18    in a second.  But, Mr. Mariotti, your understanding is that

19    it's time sensitive because roughly four weeks from now if

09:12AM    20    the money isn't handed over, the Village is going to -- the

21    Town is going to turn off the water?

22    MR. MARIOTTI:  Right.  I mean, July 19th there's a

23    sewer service disconnection date and that's our last

24    communication on that.  We've received nothing.

09:12AM    25    THE COURT:  No, no.  I just want -- I just want to

1    ask because I want to make sure I understand the calendar.

2    So, Ms. Grandfield, go ahead.

3              MS. GRANDFIELD:  Yeah.  I actually was just going

4    to say that that's correct, that's a statutory notice.  But

09:13AM   5  just to be clear, the main issue in this case is really sewer

6    and storm water which will be a lot more detailed so far as

7    disconnection, what have you.  But long -- long story short,

8    July 19th is the date for a potential disconnection if

9    there's no payment.

09:13AM   10          THE COURT:  Got it.  And I did not understand your

11   point about the sewer and the storm water.  Explain that to

12   me, please.

13             MS. GRANDFIELD:  So, your Honor, this is a large

14   rail yard site as you've read in the brief and the main

09:13AM   15  charge for this is actually sewer and storm water.  It's not

16   for water.  So what we're disputing here is sewer and storm

17   water because there's a lot of runoff on this site, it's a

18   very high elevation compared to the rest of the municipality

19   and it's a combined sewer and storm water because it's an old

09:14AM   20  system so all of that is combined into one and that is what

21   they're being charged this amount for that they're saying is

22   too much basically.

23             THE COURT:  Okay.

24             MS. GRANDFIELD:  It's not water.

09:14AM   25          THE COURT:  Got it.  Okay.  So, Mr. Mariotti, I did

1    read the papers in detail, like I said, so I want you to know

2    that going into it.  But just in terms of setting the stage

3    here, why don't you give me a 60-second overview of what the

4    case is about and -- or what the basis for the motion is?  Go

09:14AM    5    ahead.

6            MR. MARIOTTI:  Sure.  This is -- this is a case

7    that arose from a discriminatory fee increase by the Town of

8    Cicero in which it imposed an increase on railroads, and only

9    on railroads, a fee that essentially dramatically increased

09:15AM    10    the amount that railway BNSF is going to be paying on a

11    yearly basis.  So instead of paying, for example, $70,000 a

12    year, it's paying well over $900,000 a year.  So I think the

13    first bill that came for over $90,000 on a monthly bill was

14    more than they had paid the entire previous year.

09:15AM    15            There's no notice given.  There's been no -- you

16    know, supporting documentation given or study or any

17    reasoning that's been given regarding this from the -- from

18    the Town and on its face it discriminates against railroads.

19            So either -- you know, I think there may be some

09:15AM    20    discussion here regarding whether or not this is a fee or a

21    tax but the ordinance is preempted as a matter of law.  And

22    if it's a fee, then it preempts it because it discriminates

23    against rail.  And if it's a tax, it violates the 4RX paying

24    on taxes that discriminate against rail.

09:15AM    25            So that -- we are here essentially to get relief

1      because as we've discussed in July 19th, a major interstate

2      transportation hub is going to be closed -- shutdown.  We

3      will have to vacate the premises according to the Town of

4      Cicero and that's going to have a very significant impact not

09:16AM   5      only on BNSF and its employees but on a variety of other

6      customers that rely on BNSF.

7              And we have tried, you know, we did not just assume

8      based on some notice that this, you know, that -- that there

9      was no path forward for a resolution.  We've tried to have

09:16AM  10      those conversations with the Town but we have -- we have not

11      made progress and, well, obviously we need to -- we need to

12      know what's going to happen prior to the July 19th date.

13              THE COURT:  And as I read your motion, the Town of

14      Cicero is increasing the sewer bills from approximately

09:17AM  15      $6,600 a month to over $90,000 a month?

16              MR. MARIOTTI:  That's right.

17              THE COURT:  Which is just shy of a 15-fold

18      increase.  Do I have -- do I have that right?

19              MR. MARIOTTI:  That's right.

09:17AM  20              THE COURT:  Okay.  Ms. Grandfield, does the Town of

21      Cicero take issue with any of the facts in the motion?

22              MS. GRANDFIELD:  I do take issue was several of the

23      facts in the motion.  I do also take issue with the idea that

24      BNSF tried to resolve this.  That's not -- I don't think

09:17AM  25      that's a hundred percent accurate.  There are some

1   discussions that are left out of the conversation -- left out

2   of the brief that we additionally had.  You'll note that we

3   sent a response letter to BNSF and then there were a few

4   months that went by.

09:17AM   5        During that time, we actually spoke with

6   Mr. Mariotti, our water commissioner did, we explained about

7   the issue of sewer and storm water runoff, we explained that

8   it was surcharging our system, that they had changed the

9   grading, and that it was actually causing flooding from their

09:18AM   10  site throughout the Town on our antiquated system so I take

11  issue with that fact.

12       I also take issue with the fact that we are

13  targeting railroads specifically.  That is not at all the

14  case.  In fact, the Town has several multi-national

09:18AM   15  corporations within Town limits, including Citgo and Bimbo

16  Bakeries, which own such large subsidiaries as Sara Lee.  We

17  have not -- so, in essence, we have not targeted BNSF because

18  it's a railway or because it's a multi-national or non-local

19  corporation.  Instead, the basis for the increase in fee is

09:19AM   20  the fact that we were basically undercharging them for

21  several years because despite the fact that the Town of

22  Cicero is an extremely -- well, not extremely, but is a large

23  municipality in the State of Illinois, BNSF rail yard takes

24  up ten percent of the Town's total land in the Town of

09:19AM   25  Cicero.

1       And basically -- and I'm going on in this but this

2   is some of the facts that are at issue.  But basically since

3   2010 or 2011 going forward, there's always been runoff that

4   has caused flooding but, as the Court's probably aware, just

09:19AM     5   generally rainfall has increased.

6       In addition to that, BNSF has been slowly changing

7   their property from shards and aggregate -- in other words,

8   gravel and soil -- to blacktop and it's been raising it

9   several feet to the point where there are fire hydrants on

09:20AM     10  the property where you can only see the tops of the hydrants

11  now they've blacktopped it so much higher.

12      So now we've got -- our system is just being

13  overwhelmed with BNSF runoff and its combined sewer and storm

14  water because it's an older system and it's causing flooding

09:20AM     15  all over the place, including on major highways and in

16  homeowners' backyard.

17      So that's kind of the facts as to why these

18  significant increases.  The Town is just trying to find a way

19  to deal with this incredible amount of runoff that BNSF is

09:20AM     20  creating and it's not just an incredible amount of runoff,

21  it's an incredible amount of runoff from a commercial and

22  industrial site that is transporting all sorts of things

23  across the country as BNSF emphasizes.

24      So, you know, that's where we are so far as the

09:21AM     25  facts.  I think those are the primary facts in dispute.  I

1    mean, I probably have gone on too long already.  I can

2    provide more detail that I've gotten from my Town engineer

3    and what have you but those are kind of the primary things in

4    dispute.

5    THE COURT:  So -- and thank you for that.  So is it

6    your position that the Town of Cicero is increasing the rates

7    here not because of the water usage but rather because of the

8    runoff, in other words, a flood-related issue, not water

9    usage issue?

10    MS. GRANDFIELD:  Correct.  The issue is related to

11    the amount of storm water runoff and -- as well because it's

12    combined.  It's related to sewer.  So the fee that they're

13    being charged that they're disputing is a combined sewer and

14    storm water fee.

15    THE COURT:  Okay.  How about -- how about the water

16    usage, though, has Burlington's water usage changed at all?

17    MS. GRANDFIELD:  As far as I know, I do not believe

18    there has been a significant increase in their water usage.

19    THE COURT:  Okay.  And I'll tell you at the outset,

20    "I don't know" is an acceptable answer.  If you don't know

21    the answer, that's fine too, but.  Well, let me ask you this:

22    How did Cicero calculate the new fee?

23    MS. GRANDFIELD:  They calculated it -- my

24    understanding was -- hold on.  I'm looking at my notes here.

25    THE COURT:  Okay.

09:21AM (line 5)
09:21AM (line 10)
09:21AM (line 15)
09:22AM (line 20)
09:22AM (line 25)

1       MS. GRANDFIELD:  It's my understanding that they

2   did a rough calculation as to what the cost would be for

3   essentially ten percent of the Town's sewer and storm water.

4   They also added in there a -- there's a $90,000 a year sewer

09:23AM   5   tax that the City of Chicago has implemented which affects

6   them.  And then -- and then I believe they did add an

7   additional amount because of the fact that they anticipate

8   that either they're going -- again, I don't want to get too

9   deep in the weeds here but there are some implications --

09:23AM   10       THE COURT:  I'm already -- I'm already -- I'm

11   already deep in the weeds so go ahead.

12       MS. GRANDFIELD:  Okay.  So the -- the MWRD, the

13   Metropolitan Water Reclamation District, also regulates storm

14   water.  For a while, several properties were exempt and

09:23AM   15   grandfathered in until they passed a new ordinance in 2014.

16   So as -- any development after 2014, that property has to

17   provide for some sort of a retention basin for storm water.

18       Now because of BNSF having been where it is around

19   a long time and then because of the way that they have

09:24AM   20   incrementally raised their elevation and tapped into sewers,

21   we're not certain exactly as to how we're going to be able to

22   resolve this and so the Town may need to actually do some

23   sort of detention basin or something like that if BNSF

24   doesn't, which is going to be extremely difficult and costly

09:24AM   25   because of where the property is and, you know, it's

1    landlocked.  So -- and again, just given the amount of

2    runoff, that would have to be a really large below-grade

3    basin so there was an additional amount added for that.

4            And then in addition to that, I believe they made

5    it the same as -- there's another property that is further

6    south, Hawthorne Race Course, which has similar drainage

7    problems now.  It is actually outside Town limits but they

8    also are being charged a similar fee -- I think the same fee

9    per acre -- but their ultimate cost is less because they

10   don't have as many acres.  Lastly --

11           THE COURT:  Got it.  Go ahead.

12           MS. GRANDFIELD:  One last point -- sorry -- I would

13   say is that our civil engineers told us that because of the

14   type of property, that it would be more appropriate for us to

15   charge an area fee as opposed to some sort of -- you know,

16   equating it to some sort of water usage fee because the real

17   issue with this site was sewer and storm water runoff and

18   that would just be the appropriate way to charge it in

19   stages.

20           THE COURT:  Did Cicero perform any kind of study at

21   all before raising the rates?

22           MS. GRANDFIELD:  They did not request a specific

23   study; no.

24           THE COURT:  You broke up a little there, Ms.

25   Grandfield.  Say it again, please.

1    MS. GRANDFIELD:  Oh, I'm so sorry.  They did

2  not -- I do not believe they performed a specific study.

3    THE COURT:  Okay.  And when you were giving your

4  answer a minute ago, you said "they did this, they did that."

09:26AM  5  Do you know who these people are?  In other words, do you

6  know who had their fingers in the pot here in terms of making

7  the decisions and coming up with whatever analysis needed to

8  be done to generate this change?

9    MS. GRANDFIELD:  Yes.  So it was a combination of

09:26AM  10  the water commissioner for the Town of Cicero and the Town of

11  Cicero's civil engineer who has his PE stamp, Novotny

12  Engineering which the Town appoints, and then it was replies

13  via ordinance pursuant to the Illinois Municipal Code which

14  allows, you know, of course Illinois municipalities to set

09:27AM  15  rates for this sort of thing sometime I think in December.

16  It's in plaintiff's pleadings.

17    So yeah, so that was basically the decision makers,

18  in short, would have been the water commissioner, the

19  professional engineer, and then the board to the extent that

09:27AM  20  they're passing an ordinance.

21    THE COURT:  Got it.  Well, I'm going to require the

22  Village -- excuse me, the Town to file one week from today a

23  list of all individuals who played a role in this decision.

24  I think given the nature of the case, we need to get to the

09:27AM  25  bottom of it.  So one week from today, you're going to file

1   on the docket a list of everyone who was involved and the

2   nature of their involvement.  Okay?

3           MS. GRANDFIELD:  Okay.

4           THE COURT:  So let me ask you this:  I looked at

5   the ordinance and Subpart 3 was "railroad yards and rights of

6   way," and it talked about railroads, plural.  Apart from

7   Burlington, are there any other railroads in Cicero that are

8   affected by this change?

9           MS. GRANDFIELD:  No.

10          THE COURT:  Got it.  So when it says "railroads

11  shall be charged," what that really means is Burlington

12  Northern shall be charged in effect?

13          MS. GRANDFIELD:  I mean, yes.  There's no other

14  railroads or rail yards that I'm aware of.

15          THE COURT:  Got it.  Do you know, by the way, why

16  the Town charges some people based on water usage and others

17  by acre?  For example, Subpart 2 is "commercial and

18  industrial service."  It says "rates for commercial and

19  industrial service for all water consumed shall be 56.06," et

20  cetera, et cetera, "per lot," but railroads are charged not

21  by usage but by acreage.  Why is that?

22          MS. GRANDFIELD:  It has to do with what is an

23  appropriate charge based on the tax on the system and the

24  amount of runoff.  And again, this is me taking what I've

25  learned from the civil engineers so this is Lawyer Cynthia

1    talking about civil engineer.  But it has to do with what is

2    the more appropriate charge.  And, for example, just taking

3    the Citgo site, which is a commercial and industrial site,

4    they do not generate as much sewer and storm water and it's

09:29AM    5    appropriate to just charge them in line with their water use

6    because they have natural drainage on their site such as soil

7    and I believe some sort of -- either what's called aggregate

8    or shard, which is basically gravel, so everything kind of

9    naturally drains and you don't have as much a runoff or as

09:30AM    10    much of a problem.

11    Then with some other sites like Bimbo Bakery, for

12    example, their water usage is so high already given the

13    nature of their business that that just makes their sewer and

14    storm water comparable and appropriate.  They actually were

09:30AM    15    paying more than BNSF in sewer and storm water prior to this

16    latest increase even though they're a much smaller site

17    geographically.

18    And then some of the newer commercial sites such

19    as, you know, like a Home Depot or what have you, they would

09:30AM    20    have been constructed in a later time where they would have

21    had to put in different sort of sewer and storm water

22    features like I was talking about with the issue of the BNSF

23    site kind of having been around for a very long time in the

24    old system.

09:31AM    25    THE COURT:  Whose idea was it to change the rate

1    for the railroad?

2         MS. GRANDFIELD:  I mean, I don't know that it was

3    one person.  I think it was a collective thing with the Town

4    because just honestly the runoff is just so immense from

5    there and we have historically had difficulty in reaching any

6    sort of resolution with BNSF when we have had other issues in

7    the past, even just a smaller issue like grass-cutting, they

8    don't cut their grass and, you know, it was like a big to do

9    to even get that done.  So after --

10        THE COURT:  Did you try -- did you try, though?  I

11   mean, did -- what the motion said -- I know you haven't had a

12   chance to weigh in yet but the motion said, look, Burlington

13   Northern was completely smacked out of the blue by this, they

14   didn't see this coming and all of the sudden they got a

15   bill -- instead of $6,000 a month, for $90,000 a month.  They

16   didn't give you -- they said that, look, the Town didn't give

17   us notice of the hearing, we didn't know that this was a

18   proposal, they just increased our rates by 15 times without

19   telling us in advance without talking this over.  Is that

20   true?

21        MS. GRANDFIELD:  Well, I don't believe that they

22   are -- the Town is required to give any -- have any sort of

23   hearing so I wasn't really --

24        THE COURT:  That's -- that's not my question.  My

25   question is:  Did you ever go to Burlington Northern and say

09:31AM

09:31AM

09:32AM

09:32AM

09:32AM

1    look, folks, we've got all kinds of problems with your water

2    runoff, you're putting more demands on the system than you're

3    paying for here, did you ever have that discussion?

4              MS. GRANDFIELD:  I do not know with respect to

09:33AM  5    prior to the passing of that ordinance because I was not

6    personally involved.  I have not asked that specific

7    question.  I do know that I had it -- that I, myself, was on

8    a phone call with counsel that's on the line here with our

9    water commissioner where we did explain to them that this was

09:33AM  10   causing an immense amount of runoff and flooding and that is

11   why there is a break between the initial response to BNSF and

12   then the 60-day notice is that we did agree, you know, please

13   let's try and resolve this and work this out and we basically

14   never heard anything back from BNSF other than, you know, we

09:33AM  15   still don't want to pay the fee.  But I know --

16             THE COURT:  When was that?  When was that

17   conversation with the water commissioner and Burlington's

18   counsel?

19             MS. GRANDFIELD:  It was in March.

09:34AM  20             THE COURT:  You can ballpark it.

21             MS. GRANDFIELD:  Yeah.  I believe -- I looked it up

22   the other day.  I didn't particularly -- I didn't

23   particularly have it in my notes but I believe it was like

24   mid March and then we agreed to just say anything including

09:34AM  25   the interest rate that they're talking about until April 1st

1    and try to make a good faith basis to resolve this issue.

2              THE COURT:  Got it.

3              MS. GRANDFIELD:  And during that -- yeah.

4              THE COURT:  I will tell you that it's a bad look

09:34AM    5    for the Town to raise rates like this without telling

6    Burlington anything in advance.  I don't know what the story

7    is on that but it doesn't inspire confidence in me on the

8    decision making.  I guess I don't know why they couldn't have

9    raised this issue with Burlington in advance.  And if they

09:35AM    10    did, if the story is the Town of Cicero did raise issues

11    about water and runoff and sewer usage and demands on the

12    system, if they raised those issues with Burlington before

13    the decision was made to increase the rates, that's something

14    I'd be interested in knowing.  Okay.  So when --

09:35AM    15             MS. GRANDFIELD:  Yes.

16             THE COURT:  -- you respond -- when you respond --

17    maybe there's a back story there.  I don't know.  I'm still

18    learning the case.  But if there's a back story there, I want

19    you to tell me.  Does that make sense?

09:35AM    20             MS. GRANDFIELD:  Yes.

21             THE COURT:  So before I talk about where we're

22    going from here, folks, I'm going to give Burlington's

23    counsel a chance to weigh in.  You've been patiently

24    listening and I know most lawyers chomp at the bit to say

09:35AM    25    things so I'll give you a chance to say whatever you want to

1    say before I tell you where we're going.  Go ahead.

2            MR. MARIOTTI:  Thank you, your Honor.  A few

3    things.  So in the -- in the filings that we made, I made a

4    deliberate attempt not to discuss our conversations

09:36AM  5    with -- with opposing counsel because I think there were

6    arguably settlement negotiations and I didn't think that was

7    appropriate.  But since that -- the contents of those

8    conversations have been placed before your Honor, I'll just

9    say I strongly disagree with the characterization that's been

09:36AM  10    given.

11            I mean, what I would say is, you know, it was

12    apparent to me -- and I think it's apparent today that there

13    really was no basis, there was no study, there was no

14    analysis done.  They didn't -- they weren't as forthcoming

09:36AM  15    about that but it was fairly obvious that there

16    was nothing -- there's no basis for this 15-fold increase.

17    And so what I did is asked them for information for specifics

18    so that we could evaluate what an appropriate rate would be

19    and come back to them with a proposal and they repeatedly

09:36AM  20    refused to do so.

21            Now there was a -- there's a statement made that

22    there's some sort of agreement that there was an agreement to

23    stay this late fee and so forth.  Well, there was an

24    agreement not to impose it for just a short period of time, a

09:37AM  25    matter of weeks, but if we didn't agree to a resolution with

1    them -- within that few-week period, the late fees are going

2    to come back so it really -- it ended up being a very short

3    pause.

4         And the reason that I came back to them to ask

09:37AM  5    them, hey, what is -- is there some sort of refund process,

6    et cetera, because I'm trying to figure out, we may have been

7    willing to do some escrow or have some sort of alternative

8    arrangement but -- which they weren't interested in, I don't

9    believe, they certainly didn't seem to be. I think the

09:37AM  10   response I received was essentially that they were going to

11   come -- which we've outlined in the briefing, that they were

12   going to come and order us to vacate the railway facility.

13        Now I will just say there's been a number of

14   assertions made today about, you know, the flooding and

09:37AM  15   various issues. There was some illusions made, no specifics,

16   but some illusions made during our prior conversations with

17   them. They haven't done a study so I don't know what this is

18   based on other than just anecdote but, you know, BNSF does

19   have natural drainage and it's -- on its face, I mean, this

09:38AM  20   ordinance does just target BNSF and its facility. It's not

21   clear to me given that there's other facilities that are

22   paved over -- I was at this facility, I saw some of the other

23   large areas in Cicero when I was there, it's not -- it's not

24   clear that that is an appropriate basis for this

09:38AM  25   discriminatory rate.

1          The other thing I would just say is, I understand

2     that there's a concept that perhaps they're passing along

3     some taxes or something like that to BNSF.  It's just -- it's

4     never been explained to us why the rest of the Town and the

09:38AM    5     and the other people who are -- other people and entities

6     that are using this system are not also paying on that same

7     basis.

8          So I would just say from our -- you know, as I sit

9     here, just to be crystal clear and answer the question, BNSF

09:39AM    10    did not receive notice of this.  We have acted in good faith

11    to try to resolve this matter and the Town's response was, it

12    has essentially been that we have no choice but to pay the

13    full amount and the late fees that they (inaudible).

14         THE COURT:  Got it.  Okay.  Thank you.  So here's

09:39AM    15    what we're going to do, folks, the motion is a motion for a

16    TRO and a motion for a preliminary injunction.  Those are two

17    different things.  Does the defendant want to file a response

18    to the TRO portion -- in other words, putting aside discovery

19    which we'll get to, do you want to respond to the request for

09:39AM    20    a temporary restraining order?

21         MS. GRANDFIELD:  Well, your Honor --

22         THE COURT:  Or we can -- or we can all roll it all

23    up into, you know, post-discovery response in light of

24    everything.  Go ahead.

09:40AM    25         MS. GRANDFIELD:  Yeah.  I was going to say, your

1    Honor, I just -- I did discuss this separately with

2    plaintiff's counsel Mr. Mariotti, not to put him on the spot,

3    but I did say I don't see how this is a TRO because I don't

4    see how it's an emergency given that, you know, nothing is

09:40AM    5    going to happen in the next seven days.  To me, you know,

6    obviously I would dispute that they're entitled to a

7    preliminary injunction but that's the more appropriate

8    motion.

9    So what I would prefer to do or what makes the most

09:40AM    10    sense to me is to file some written response to all of it at

11    once and then I can just approach it as a preliminary

12    injunction because, I mean, the remedy -- the elements are

13    basically the same.  There's just that, you know, additional

14    emergency element for a TRO.

09:40AM    15    THE COURT:  All right.  So let me ask you this:

16    Burlington, do you want discovery?

17    MR. MARIOTTI:  I don't think -- I don't think -- at

18    this point I think any discovery would be -- would be very

19    limited at this point; and I'll defer to the Court in terms

09:41AM    20    of what you believe is necessary.  I think the important

21    thing for us is to ensure that the briefing and the hearing

22    are completed sufficiently in advance of the July 19th date

23    so that we're able to plan on that.

24    THE COURT:  And are there any documents you need or

09:41AM    25    are there depositions you want to take?  And I will tell you,

1   if you take any depositions, they would not count against you

2   on the merits, the long term, so go ahead.  And maybe you

3   want -- maybe you want to see the list of decision makers and

4   people that -- you know, a week from today, you're going to

09:41AM   5   get that, you're going to get a list of everybody who played

6   a role in this.  You know, maybe you can -- maybe you'll need

7   to see that before you decide if you want to take the

8   obstacle.  Go ahead.

9             MR. MARIOTTI:  I -- yeah, that's fine.  I've

09:41AM   10   learned a lot today that I didn't know before today about --

11   about -- and I still think there's going to be more to learn

12   as you suggest in the next week.  I think we would like to

13   take some depositions.  We would like to get some discovery

14   but what I am concerned about, as you could tell, is I don't

09:42AM   15   want to do anything that is going to -- going to delay a

16   proper resolution before that date for the sake of the -- of

17   my client.

18             THE COURT:  All right.  So it seems to me that the

19   Town doesn't need any discovery.  You've got all the info you

09:42AM   20   need, right, because you made the decision, am I right on

21   that?

22             MS. GRANDFIELD:  I mean, I --

23             THE COURT:  Go ahead.

24             MS. GRANDFIELD:  I would like some information

09:42AM   25   about any elevation raises that they have done and if they

1    got any permits.  I don't know how labor intensive that would

2    be for them but ideally I would like that information just in

3    general as well because obviously this is an ongoing concern

4    for the Town but I would like that information because it

09:43AM    5    affects our assessment and opinion.

6              THE COURT:  All right.  So here's what we're going

7    to do, so I'm going to order -- well, let me back up.  The

8    Village is -- excuse me, the Town of Cicero is the one

9    creating the urgency here.  They issued a shutoff notice,

09:43AM    10    said that water is going to be turned off on July 19th,

11    they're the one creating the urgency so I am not going to be

12    sympathetic to any concerns by the Village -- excuse me, I

13    keep saying the Village, I'm sorry -- the Town about

14    expediting the schedule.  They're creating the urgency and so

09:43AM    15    we're going to roll.

16              Your response is going to be due on July 1.  So one

17    week from tomorrow I want a response to the motion.  In the

18    meantime, if anybody wants to take discovery, you can take

19    discovery.  I -- I'm going to say any document requests,

09:44AM    20    documents got to be produced within one week.  Burlington's

21    counsel, you can look at the list.  If you want to take those

22    people, that's fine.  I'm not going to count any depositions

23    that you take for purposes of the PI hearing against any --

24    count, a deposition that you may have long term.  In other

09:44AM    25    words, you can depose somebody now.  It's not going to

1    preclude you from deposing them later on the merits if you

2    get that far.

3            So here's what I want to do, I want to get the

4    response from the Village -- excuse me, the Town next week

09:44AM  5    and then you guys can take discovery.  I want to know

6    by -- I'm going to set July 9th as the date for Burlington to

7    file a reply and then I -- I'm going to set it for a hearing

8    on the week of July 12th.  I'll ask my Courtroom Deputy to

9    throw out a date for a PI hearing that week.  Maybe in the

09:45AM  10    middle of the week, 13, 14, or 15.

11            COURTROOM DEPUTY:  July 14th at 9:00 a.m.

12            THE COURT:  Does that work for everybody?

13            MS. GRANDFIELD:  That works for me.

14            MR. MARIOTTI:  It works for me as well, your Honor.

09:45AM  15            THE COURT:  All right.  So does everybody

16    understand the lay of the land here?

17            MR. MARIOTTI:  We do, your Honor.  Thank you.

18            THE COURT:  And I will tell you, speaking to

19    Cicero's counsel here, I'm going to give them wide latitude

09:45AM  20    to take depositions.

21            MS. GRANDFIELD:  Okay.

22            THE COURT:  Your people have to be ready.  They've

23    got -- they're the ones creating the urgency.

24            MS. GRANDFIELD:  Right.

09:45AM  25            THE COURT:  If they want to take a deposition, your

1    people have to be available and they have to be available

2    like ASAP so they have to drop what they're doing and sit for

3    deposition because you've threatened to turn off the water to

4    a rail yard so that's how we're going to do things.

09:46AM    5        MS. GRANDFIELD:  Okay.

6        THE COURT:  We're going to get to the bottom of it,

7    we're going to get to the bottom of it now so they're going

8    to have wide latitude to depose who they want.

9        I'm going to direct Burlington's counsel to be

09:46AM    10    humane and reasonable.  Don't take depositions you don't

11    need, don't go on longer than you need it, be targeted, you

12    know, be proportionate.  But if you need somebody, you need

13    to talk to somebody, you need to get some answers, you're

14    going to get that opportunity.  Okay?

09:46AM    15        MR. MARIOTTI:  Thank you, your Honor.

16        THE COURT:  I do want to talk about document

17    preservation as well.  Ms. Grandfield, has the Town -- what

18    has the Town done to preserve documents up to this point?

19        MS. GRANDFIELD:  Well, all the documents would be

09:46AM    20    preserved because they would be part of the code of

21    ordinances and resolutions and what have you with respect to

22    that.  I will -- I believe that all of the Town engineers'

23    documents will be part of the Town's public record but I'm

24    going to confirm with them today.

09:47AM    25        THE COURT:  What about phones, people's phones and

1    emails, have you talked to them about that?

2           MS. GRANDFIELD:  I have not but I will talk to them

3    about it.

4           THE COURT:  For example, has the Village president

09:47AM  5    ever gotten a text about this issue on his phone?

6           MS. GRANDFIELD:  Good question.  I would say

7    unlikely just knowing his particular habits.  He would be

8    more likely to just have a phone call and I know for a fact

9    he's not an emailer but I will -- I will definitely check on

09:47AM  10    that.

11           THE COURT:  All right.  So here's what I'm going to

12    need you to do, I'm going to need a certification from you

13    one week from today.  It can be -- it needs to be signed

14    under penalty of perjury by somebody from the Town certifying

09:48AM  15    what they've done to preserve documents.  It needs to include

16    documents in the possession, custody, and control of the Town

17    itself as well as, you know, personal phones by anyone

18    associated with the Town, so the Village president, his phone

19    and any of the engineers.  If anybody is texting or emailing

09:48AM  20    about this on their phone, that's covered.

21           I'm going to direct that you notify the Town about

22    the preservation obligations.  I want to make everything --

23    make sure everything from day one is locked down and

24    preserved.  Does that make sense?

09:48AM  25           MS. GRANDFIELD:  Yes.  You meant one week --

1    THE COURT:  Yeah, one week from today I need a

2    certification from -- from the Town and it needs to outline

3    what steps the Town has done to preserve documents.  I want

4    to make sure the record is preserved; nothing's lost.  I want

09:48AM    5    to make sure everybody understands they've got to keep

6    everything.  See what I'm saying?

7    MS. GRANDFIELD:  Yes.

8    MR. MARIOTTI:  Your Honor --

9    THE COURT:  Did the Town have a general counsel or

09:49AM    10    how -- or what?

11    MS. GRANDFIELD:  Yes, but we are the general

12    counsel.  Basically Mike Del Galdo is the Town attorney and

13    I'm here from Del Galdo Law Group.

14    THE COURT:  Got it, okay.  Well, maybe he can be

09:49AM    15    the -- maybe he can be the certifying person.  I need

16    something from the Town certifying what steps exactly they've

17    done to preserve documents.  And I don't mean just like the

18    agenda.  I mean actually, you know -- I mean, you're telling

19    me that there are all these problems with their runoff.

09:49AM    20    There's got to be documents about that if it's a text, what

21    they've experienced, emails, texts, whatever is in the file

22    cabinet, something, right?  So if that's the story, there's

23    got to be documents about it.  I just want to make sure that

24    we have an understanding from day one about what the cert --

09:49AM    25    what the preservation obligations are going to be.  Does that

1    make sense?

2    MS. GRANDFIELD:  Okay.  Makes sense.

3    THE COURT:  Does anyone have any questions about

4    either the briefing schedule or the hearing schedule or what

09:50AM    5    my expectations are for discovery in the meantime?

6    MR. MARIOTTI:  No, your Honor.

7    MS. GRANDFIELD:  My only question was with respect

8    to the hearing itself, do you just anticipate that being oral

9    argument or should I make, for example, my Town engineer

09:50AM    10    available?

11    THE COURT:  You know, that is an excellent

12    question, Ms. Grandfield, and I was wondering that myself

13    frankly.  I think it would help me if you folks would let me

14    know on the date of -- I was going to say the date of the

09:50AM    15    reply.  I think it would be helpful if you would let me know

16    no later than July 12th if any party thinks there needs to be

17    an evidentiary hearing on it.  Do you see what I'm saying?

18    MS. GRANDFIELD:  Okay.  Yeah.

19    THE COURT:  I don't know on the front end if I need

09:51AM    20    to hear testimony from anybody.  Maybe I can just do it on

21    the papers probably, just do it on the papers.  You know,

22    maybe a declaration would work, I don't know, but I don't

23    know the lay of the land yet and maybe you folks don't

24    either.

09:51AM    25    I would like to know no later than the 12th on

1    behalf of the parties if any party thinks there's a need to

2    have testimony.  Does that make sense?

3                   MR. MARIOTTI:  It does.

4                   MS. GRANDFIELD:  Yes.

5                   THE COURT:  And, Ms. Grandfield, for example, right

6    now do you think that -- do you think you would need to call

7    somebody from the Town, the engineer or someone else?  Hard

8    to say, maybe.

9                   MS. GRANDFIELD:  Yeah.  It's a little hard to say.

10   I think some of these questions are questions of facts and

11   law.  I'm going to try to address it with, you know, an

12   affidavit, for example, but I just don't know because

13   obviously civil engineering, for example, is highly

14   specialized so, you know, I just don't know what the limits

15   of that are.  I think I won't know until I file my response

16   but I just wanted to anticipate it.

17                  THE COURT:  Yeah.  I will tell you by way of a

18   preview, Ms. Grandfield, I am interested in knowing the full

19   story here about this rate increase.  You know, the railroad

20   paints a picture that they're being picked on essentially,

21   that, you know, they have a vitally important facility and

22   the Village -- excuse me, the Town is taking advantage of

23   them by sharply increasing their rates out of the blue

24   without any advanced warning.

25                  It leaves me wondering why the increase was there,

1    who made the decision, you know, is this some sort of

2    discriminatory act where they're just taking advantage of a

3    horrible railroad that needs something or is there a

4    legitimate cost being passed on to the railroad.

09:53AM

5    So I think you need to know on the front end that I

6    really want to hear what the explanation is for this rate

7    increase so you're going to have to give me a pretty detailed

8    satisfactory explanation to put me at ease here about what

9    went down.  Does that make sense?

09:53AM

10    MS. GRANDFIELD:  Yes.

11    THE COURT:  So you should know going in that I'm

12    going to expect a pretty fulsome explanation from your

13    engineering people about what the basis is and, you know,

14    what the -- why the decision was made.

09:53AM

15    MS. GRANDFIELD:  Okay.  Got it.

16    THE COURT:  Got it?  Mr. Mariotti, is there

17    anything else that you want to cover, anything else you want

18    to raise, any questions, anything like that?

19    MR. MARIOTTI:  I don't think so.  I mean, from

09:54AM

20    where I sit, I don't think that there's any -- going to be

21    any discovery on -- that they would have of us.  I can't

22    imagine what that would be since we didn't know about this

23    before -- beforehand so I think -- I don't think I have any

24    questions on that end.

09:54AM

25    THE COURT:  And that's my assumption, too.  I don't

1    know but that would be my assumption as well.

2          Ms. Grandfield, is there any other topic you want

3    to raise, any questions?  And I'll say at the outset, folks,

4    I don't think I have a monopoly and good ideas up here so if

09:54AM    5    anybody has a suggestion for a different procedure how to

6    handle things, I'm certainly amenable to listening to you.

7    This seems to make sense to me.  We've got a water shutoff on

8    July 19th.  There may be some factual issues so I think we

9    need to get to the bottom of it, gather facts and have a

09:54AM    10    hearing on it and go from there.  But if anyone else has

11    another idea, I'm happy to hear from you.  Ms. Grandfield, go

12    ahead.

13          MS. GRANDFIELD:  That sounds like a good plan

14    procedurally.  The only other thing I wanted to add is that

09:55AM    15    because a lot of this stuff has to do with detention and

16    runoff that it would be helpful just behind the scenes -- I

17    know Renato and I have talked -- to discuss if there is a

18    possibility that BNSF could institute their own, you know,

19    detention, or what have you, so that they could potentially

09:55AM    20    not even have this runoff, which would eliminate the issue.

21          That's a really, in my mind, big difficult civil

22    engineering problem but I just wanted to put that out there

23    because it is a big difficult civil engineering problem in my

24    mind so let's start thinking about it now.

09:55AM    25          THE COURT:  Can I ask you a question on that,

though?

        MS. GRANDFIELD:  Sure.

        THE COURT:  So if it's a big difficult civil engineering problem, have you talked about that with Burlington before today, in other words, maybe before March? I don't know if it was raised in March when the engineer was in line but --

        MS. GRANDFIELD:  Right.

        THE COURT:  -- had the parties actually talked about this?

        MS. GRANDFIELD:  Again, I don't know.  I'm not going to represent -- I probably should know the answer to that but I do not know the answer to that specifically so I'm not going to, you know, represent one way or another --

        THE COURT:  Yeah.

        MS. GRANDFIELD:  -- so --

        THE COURT:  It just wouldn't -- it just wouldn't be a good look -- it wouldn't be a good look if the answer was there's this huge problem that we've never told them about before, right.  That just -- that wouldn't -- that wouldn't play well.  So if you've raised it, I want to know.  You hear what I'm saying?

        MS. GRANDFIELD:  Okay.  Yes.

        THE COURT:  One other thing I need from Burlington's counsel -- and don't anyone read into this, read

1  anything into this, okay, but one thing I require for all

2  TROs and all preliminary injunctions is a draft order just as

3  a matter of course.  You're asking --

4        MR. MARIOTTI:  Sure.

09:56AM  5        THE COURT:  -- to issue emergency injunctive

6  relief.  I don't know what that would look like, right, so I

7  need to get a draft order submitted to my proposed order

8  inbox.  The email address is on my web page.  And again,

9  don't anyone read anything into that.  It's a matter of

09:57AM  10  course.  This is what I'm requiring.  I have TRO hearings

11  pretty routinely so don't read anything into it.

12        Is that okay, Mr. Mariotti, can you get that to

13  me -- maybe you can do it before -- do it on the day of your

14  reply.

09:57AM  15        MR. MARIOTTI:  For sure.  We will -- we'll take

16  care of that, your Honor.

17        THE COURT:  No later than the 9th.  Okay, folks.  I

18  think we've made some progress today.  We got a plan going

19  forward.  Good luck with the exchange of discovery.  I'm

09:57AM  20  assuming there will be no issues on that.  I'm assuming

21  people will be proportionate and cooperative and responsive

22  to each other.  If there are any issues, you know how to

23  reach me and I'll look forward to the materials and we'll go

24  from there.

09:57AM  25        MR. MARIOTTI:  Thank you, your Honor.

1          THE COURT:  Okay.  We're adjourned.  Thank you,

2    folks.

3          MS. GRANDFIELD:  Thank you.  Bye.

4        (Proceedings concluded at 9:57 a.m.)

5

6                C E R T I F I C A T E

7

8       I hereby certify that the foregoing is a telephonic

9    transcript of proceedings before the Honorable Steven C.

10   Seeger on June 23, 2021.

11

12   /s/*Laura LaCien*                    June 28, 2021
     Official Court Reporter                DATE

13

14

15

16

17

18

19

20

21

22

23

24

25