**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BNSF Railway Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-cv-3072 |
| | ) | |
| Town of Cicero, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF BNSF RAILWAY COMPANY'S
LOCAL RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Plaintiff BNSF Railway Company ("BNSF"), pursuant to Federal Rule of Civil

Procedure 56 and Local Rule 56.1, respectfully submits the following statement of material facts

that BNSF contends are undisputed and entitle BNSF to judgment as a matter of law.

**A.      The Parties**

1.      BNSF is a common carrier by rail regulated by the federal Surface

Transportation Board and is classified as a Class I railroad under federal law.  Declaration of

Gregg Zody ¶¶ 4–5, attached hereto as Exhibit A.

2.      Defendant Town of Cicero ("Cicero") owns and operates a water and

sewer system.  Excerpt from 2019 Comprehensive Annual Financial Report of the Town of

Cicero, Illinois, attached as Exhibit 1 to the Declaration of Rebecca L. Sciarrino, attached hereto

as Exhibit J.

**B.      BNSF's Interstate Rail Operations**

3.      BNSF operates one of the largest freight railroad networks in North

America and is one of seven North American Class I railroads.  Ex. A ¶ 4.  BNSF serves 28

States, portions of Canada, and key Mexican gateways, with approximately 32,500 route miles. *Id.*

4. BNSF provides intermodal shipping services, *i.e.*, the transfer of containerized freight from an origin to a destination involving the joint provision of service by various types of transportation providers. Ex. A ¶ 7.

5. BNSF serves thousands of customers and industries, including major parcel carriers and some of our Nation's largest retailers. Ex. A ¶ 6. BNSF helps to feed, clothe, supply, and power communities throughout the United States and beyond, connecting local businesses and consumers with the global supply chain. *Id.*

6. BNSF has four facilities in the Chicagoland area. Ex. A ¶ 9. BNSF owns the facility involved in this litigation, which is located at 5601 W. 26th Street, Cicero, Illinois. *Id.*; October 7, 2021 Declaration of Brooke L. Gaede ¶ 3, attached hereto as Exhibit B; Ex. 1 to Ex. B.

7. BNSF's Cicero railyard is a critical facility for interstate commerce in general and the movement of intermodal freight in particular. Attached hereto as Exhibit 2 to Ex. B is a track chart demonstrating that BNSF's Cicero railyard connects to the interstate rail network. BNSF's Cicero railyard connects the Midwest to the Pacific Northwest. Ex. A ¶ 9. The railyard thus often serves as the destination point for imports shipped across the Pacific Ocean, which travel across the Western United States to Cicero. *Id.* Upon arrival at BNSF's Cicero railyard, freight can be distributed by truck or interchanged to another railroad to travel eastbound. *Id.*

8. BNSF handles high volumes of freight in Cicero. Ex. A ¶ 12. In 2020 alone, BNSF's Cicero railyard "lifted" over 450,000 containers of freight. *Id.* To "lift" a freight

container is to move the container either on or off a train. *Id.* The containers lifted in Cicero are 53 feet long and weigh, on average, 35,000 to 40,000 pounds. *Id.* ¶ 13.

9. BNSF transports a variety of parcels, finished goods, and products through its Cicero railyard, including products found on the shelves of major retailers and in American homes. Ex. A ¶ 6.

10. The intermodal shipping services BNSF provides also benefit our public infrastructure and environment. Ex. A ¶ 14. Moving freight containers on BNSF's rail lines means less congestion on our highways and less wear and tear on our public infrastructure. *Id.* It also means less fuel consumption because BNSF is three to four times more fuel efficient than trucks. *Id.*

### C.     The Sewer Rate Ordinance ("Ordinance")

11. In December 2020, Cicero passed an Ordinance requiring railroads, and no other commercial and industrial (C&I) users within Cicero, to pay a monthly sewer charge of $350 per acre per month. *See* Cicero Code of Ordinances § 98-266. A true and correct copy of the Ordinance is attached hereto as Exhibit 1 to the Declaration of Renato Mariotti, attached hereto as Exhibit C.

12. "Railroad yards and rights-of-way" are the only users within Cicero charged by the acre. Ex. 1 to Ex. C. C&I users in Cicero are charged according to actual water use (*viz.*, $56.06 per month, plus $18.69 for each additional 1,000 cubic feet of water used above the first 3,000 cubic feet). *Id.*

13. If BNSF were charged the same rate as other C&I users within Cicero, its monthly bills would be approximately $150. Declaration of Rakiya Tasiu, ¶ 5, attached hereto as Exhibit D.

14.     The two individuals involved in formulating the rate, Director of the Water and Sewer Department Lido Manetti and Town Engineer Timothy Geary, are unaware of the costs to provide BNSF sewer services.  Excerpts of Lido Manetti Deposition Transcript at 51:18–20, attached hereto as Exhibit E; Excerpts of Timothy Geary Deposition Transcript at 45:11–14, attached hereto as Exhibit F.

15.     When asked the basis for increasing the rate to $350 an acre, Mr. Geary responded, "I do not know."  Ex. F at; 41:22–24; 43:1–7.  Likewise, Mr. Manetti said he does not know why Cicero implemented such a large increase, Ex. E at 38:22–39:2, and does not know what, if anything, factored into the $350-per-acre rate, *id.* at 44:24–45:5.

16.     To formulate the new rate, Mr. Geary started by applying various, hypothetical annual increases to the rate charged to railroads.  Ex. F at 21:23–22:7.   He did so even though was "not sure" when that rate had last been increased, and despite the fact that Cicero does not raise rates on an annual basis.  *Id.*  Mr. Geary's calculations "got up to the $50 an acre range."  *Id.* at 24:6–7; 42:9–21.  Mr. Geary does not know how Cicero arrived at the $350-per-acre rate, instead of something closer to the $50-per-acre figure he calculated.  *Id.* at 42:19–24.

17.     Mr. Geary does not know why Cicero treats C&I users differently from railroads.  Specifically, he does not know why other C&I properties in Cicero are not charged by the acre, or why railroads are not charged by water consumption.  Ex. F at 19:11–13; 28:1–13.  Likewise, Mr. Manetti could not explain why railroads are treated differently from other C&I users in Cicero.  When asked, Mr. Manetti replied, "This has always been the way it is," Ex. E at 18:21–19:1, and he "do[es]n't know why," *id.* at 19:21–20:1; 36:6–14.

18.     Virtually every commercial property in Cicero has impermeable surfaces.  Ex. F at 31:7–9.  Mr. Manetti acknowledged that "quite a few" other C&I properties "have a lot

of water that runs off," but, unlike BNSF, are still charged based on water consumption. Ex. E at 26:2–14; 22:19–23–1.

19.     Mr. Geary has no data or documentation of runoff from BNSF's property, has never conducted a study regarding runoff from BNSF's property and, indeed, does not know how much water comes from BNSF's property. Ex. F at 58:20–59:6; 74:5–9. Nor is he aware how the runoff from BNSF's property compares to the runoff from other C&I properties. *Id.* at 59:7–10. Mr. Manetti also does not know how much water runoff drains from BNSF's property. Ex. E at 29:21–23. Indeed, Cicero has not measured the amount of runoff from BNSF's property or any others. *Id.* at 29:24–30:2.

20.     Mr. Manetti confirmed that Cicero did not conduct a study of runoff issues from BNSF or any other properties. Ex. E at 24:3–8. The closest Cicero came to conducting a study was Mr. Manetti going outside and "looking at" properties visually. *Id.* at 24:3–8; 28:23–29:1; 50:11–14. In fact, Mr. Manetti testified that the only information he took into account when setting the $350-per-acre rate was his visual look around the town. *Id.* at 47:2–6.

21.     When asked why Cicero increased the rates for railroads, and no other users, in December 2020, Mr. Manetti explained that he believed that other C&I users were struggling through the pandemic. Ex. E at 34:11–12. He did not consider whether or how the pandemic might affect railroads. Ex. E at 34:6–14; 36:15–23. Mr. Geary does not know why Cicero decided to raise the rate for railroads in December 2020, or why Cicero did not raise the rates for other users at that time. Ex. F at 34:14–23.

22.     Hawthorne Race Course is the only entity charged under Cicero Code of Ordinances § 98-266(4). Ex. E at 59:16–18; Ex. F at 51:4–6.

23.     Unlike the other users addressed by the Ordinance, Hawthorne does not source water from Cicero, and need not connect to Cicero's sewer system. Ex. E at 58:20–21;

Ex. F at 19:2–10.  The Village of Stickney supplies Hawthorne's water.  Ex. E at 58:20–21; Ex. F at 19:2–10.  Thus, Cicero could not charge Hawthorne based on water consumption.  Ex. E at 35:13–14; 58:18–21; Ex. F at 19:2–10.

24.     Mr. Manetti attested to not understanding what factors into the rate charged to Hawthorne, which had recently been set.  Ex. E at 45:20–22; Ex. F at 13:14–19.  Mr. Geary attested to "ballpark[ing]" Hawthorne's rate with limited information, Ex. F at 15:9–11, including by using bills from Chicago as a comparison, *id.* at 14:23–15:11.  Mr. Geary admitted that he "did not understand the Chicago method" that he used as a comparison, *id.* at 17:22–23, and did not think Chicago provided a good comparison for calculating Hawthorne's rate, *id.* at 20:4–7.  He also does not know the cost to Cicero of providing sewer services to Hawthorne.  *Id.* at 51:7–9.

25.     Mr. Geary does not understand why railroads are charged the same rate as Hawthorne.  Ex. F at 38:5–24.

26.     Mr. Manetti does not recall any discussion of the rate increase before or during the December 8, 2020 meeting at which the town Board voted to increase the rate for railroads.  Ex. E at 41:13–42:12.  Likewise, Mr. Geary never discussed the rate increase with Board members or the Town President.  Ex. F at 39:18–24.

27.     Mr. Manetti testified that there are no written documents, aside from possibly one email chain, which Cicero has not produced, regarding the rate increase.  Ex. E at 40:16–20.

28.     The Ordinance was passed at a Town of Cicero Board meeting on December 8, 2020.  Ex. 2 to Ex. C.  The minutes from the Board meeting state, "The purpose of this ordinance is to increase rates for railroad yards and rights-of-way …."  *Id.* at 2.

29.     The Board meeting lasted less than fifteen minutes.  During that meeting, the Board considered two bills, five resolutions, four ordinances, a permit, a report, and new business.  Ex. 2 to Ex. C.

**D.     Nature of the Sewer Charge**

30.     It is undisputed that the rate charged under the Ordinance is either a "fee" or a "tax."  *See* Complaint for Declaratory and Injunctive Relief ¶¶ 2, 8–9, 51, attached as Exhibit 4 to Ex. J; September 3, 2021 Letter of Ms. Grandfield, at 2, attached as Exhibit 2 to Ex. J.

31.     Some evidence supports that the charge might be a tax.  Mr. Manetti testified that Cicero offers every household $1,500 as part of a flood control program and that part of the $350-per-acre rate might fund that program.  Ex. E at 45:20–47:1.  Cicero's budget documents and a letter from Cicero's counsel indicate that in 2019 the sewer system operated at an approximately $1 million deficit.  Ex. 1 to Ex. J; Ex. 2 to Ex. J.

32.     And if the Ordinance is a not a tax, then it is a "fee."  *See* Black's Law Dictionary s.v. Fee (11th ed. 2019) ("A charge or payment for labor or services….").

**E.     Cicero's Enforcement Campaign**

33.     On February 3, 2021, BNSF received a $90,300 sewer bill from Cicero for the period of December 21, 2020 through January 19, 2021.  Declaration of James Taylor ¶ 7, attached hereto as Exhibit G; Sewer Bills, attached as Ex. 3 to Ex. G; June 9, 2021 Declaration of Brooke L. Gaede ¶ 3, attached hereto as Exhibit H.

34.     This $90,300 bill exceeded the total of all of the previous year's bills from the Cicero Bureau of Water & Sewer combined ($79,716).  Ex. G ¶ 7; February 18, 2021 Letter to Cicero President Larry Dominick, attached as Exhibit 1 to Ex. H.

35.     Given that increase, BNSF initially believed that the sewer bill received on February 3, 2021 was in error.  Ex. G ¶ 8.

36.     BNSF has continued to pay Cicero at its previous rate of $6,643 per month. Ex. G ¶ 8.

37.     After receiving its first $90,300 bill, BNSF contacted Cicero representatives to "amicably resolve [its] dispute with the Town."  Ex. H ¶ 3; Ex. 1 to Ex. H. BNSF also sought reasons for the sharp increase.  Ex. C ¶ 6.

38.     Cicero provided no response to these inquiries and, instead, asserted that the Ordinance was within Cicero's "powers under Illinois statute and the Illinois Municipal Code" and was valid based on its status as a "'home rule municipality'" with "additional powers."  March 16, 2021 Email attached as Exhibit 2 to Ex. H.  After detailing its supposed authority to charge the rate, Cicero threatened to "issue a 60-day notice of water and sewer shut off, which may include digging underground to remove pipes as well as the placement of a lien for the unpaid amount."  *Id.*

39.     Cicero imposes late penalties of $18,060 per month—*i.e.*, 20 percent of the monthly $90,300 rate—on BNSF.  Ex. G ¶ 9.  Cicero first imposed such a penalty on BNSF on February 23, 2021.  *Id.*; Ex. 3 to Ex. G.

40.     Concerned about mounting late penalties, BNSF asked Cicero if there would be a refund process to recover payments if it were later determined that BNSF overpaid. Ex. C ¶ 7; Ex. 4 to Ex. C.  Over a week passed, and Cicero never answered BNSF's questions. Exs. 4 & 5 to Ex. C.  Cicero then issued a notice that it intended to shut off sewer service to BNSF's Cicero railyard, whereupon "the property … will have to be vacated" as a "hazard to health."  Ex. C ¶ 8; Ex. 5 to Ex. C.

41.    Cicero stipulated not to enforce the Ordinance after BNSF initiated this litigation.  Stipulation dated July 28, 2021, attached as Exhibit 3 to Ex. J.   That stipulation expires on October 26, 2021.  *Id.*

**F.    BNSF's Need for Water and Sewer Services**

42.    BNSF could not operate its Cicero railyard without access to water and sewer services.  Ex. A ¶ 17; Declaration of Chuck Burriss ¶¶ 4–8, attached hereto as Exhibit I.

43.    Nearly 500 employees, along with service contractors, work on site at BNSF's Cicero railyard.  Ex. I ¶ 8.  These workers support intermodal shipping by lifting containerized freight from trucks to rail cars and vice versa, maintaining rail equipment, moving freight, and validating the routing and interchange of rail cars.  *Id.*

44.    BNSF requires water for workers' day-to-day needs and safety.  Ex. I ¶¶ 6–7.  BNSF could not reasonably operate its railyard without sanitary facilities.  *Id.* ¶ 6.  BNSF also provides break rooms with sinks and icemakers for workers to use.  *Id.*  BNSF also needs water to provide workers a safe working environment.  *Id.* ¶¶ 6–7.  BNSF maintains showers and eye washing stations on site.  *Id.* ¶ 6.  The showers enable workers to remove any skin irritants or elements they might encounter on the job.  *Id.*  The eye washing stations enable workers to flush their eyes in the event that irritants or particulate matter gets into their eyes.  *Id.*  Although BNSF's workers wear eye-safety glasses, dust or other irritants can sometimes get past these glasses, so the availability of eyewash stations is critical.  *Id.*  All of these amenities and safety measures require running water.  *Id.* ¶¶ 6–7.

45.    BNSF also requires water for equipment maintenance and safety.  Ex. I ¶ 5.  For example, BNSF uses water to clean and maintain its hostler vehicles and lift equipment, which are used to move freight containers.  *Id.*  Water is also necessary to clean vehicle windows

and walkways, both of which are safety measures. *Id.* BNSF also uses water to clean and maintain locomotives. *Id.*

46.     BNSF needs water for its fire safety planning and suppression measures. Ex. I ¶ 7. BNSF maintains ceiling sprinkler systems and fire hydrants at its Cicero railyard. Both types of suppression systems require water. *Id.*

47.     BNSF could not operate its Cicero railyard without workers, who require water, on site. Ex. I ¶¶ 8–11. Without being on site, these workers would not be able to continue in their current jobs. *Id.* ¶ 8.

48.     If Cicero were to shut off BNSF's water and sewer services, BNSF would lose business because its Cicero railyard would shut down. Ex. A ¶¶ 17–19. None of BNSF's other Chicago-area facilities could absorb the volume of freight handled at its Cicero location in the event of a closure. *Id.* ¶ 18. Each is operating at capacity and has maximized available space. *Id.* Nor could BNSF replace its Cicero railyard. *Id.* Chicago has the busiest rail network in North America because it is the only location where all seven Class I rail carriers connect. *Id.* Space in the Chicago area is severely limited. *Id.*

49.     Customers would be harmed by a shutdown of BNSF's operations in Cicero. Ex. A ¶ 20. Although some of BNSF's competitors might be able to absorb some of the volume processed at BNSF's Cicero railyard, they could not handle all of it. *Id.* ¶ 19. Accordingly, customers would be left with less access to crucial shipping services, and BNSF would suffer lost customer goodwill. *Id.* ¶¶ 19–20.

50.     The general public would also be harmed by a shutdown of BNSF's operations in Cicero. Ex. A ¶¶ 21–22. Consumers rely on BNSF's rail services for shipment and delivery of products and mail for their businesses and daily lives. *Id.* ¶ 21.

Dated: October 7, 2021                              Respectfully submitted,

                                                    **BNSF RAILWAY COMPANY,**

                                                    By:  */s/ Renato Mariotti*

                                                    Renato Mariotti
                                                    Holly H. Campbell
                                                    THOMPSON COBURN LLP
                                                    55 East Monroe, 37th Floor
                                                    Chicago, Illinois 60603
                                                    312.346.7500
                                                    rmariotti@thompsoncoburn.com
                                                    hcampbell@thompsoncoburn.com

                                                    Sara L. Chamberlain
                                                    THOMPSON COBURN LLP
                                                    One US Bank Plaza
                                                    St. Louis, Missouri 63101
                                                    314.552.6000
                                                    schamberlain@thompsoncoburn.com

                                                    Benjamin J. Horwich (*pro hac vice*)
                                                    Rebecca L. Sciarrino (*pro hac vice*)
                                                    MUNGER, TOLLES & OLSON LLP
                                                    560 Mission Street, Twenty-Seventh Floor
                                                    San Francisco, California 94105
                                                    415.512.4000
                                                    ben.horwich@mto.com
                                                    rebecca.sciarrino@mto.com

                                                    ***Attorneys for Plaintiff***

<u>**CERTIFICATE OF SERVICE**</u>

I, Renato Mariotti, hereby certify that on October 7, 2021, I electronically filed the foregoing LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

*/s/ Renato Mariotti*